MGD

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| Michael Price, | No. CV 18-02322-PHX-DGC (DMF) |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| Charles L. Ryan, et al., | |
| Defendants. | |

Plaintiff Michael Price, who currently is confined in Arizona State Prison Complex-Yuma, brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1.) Defendant Banning moves for summary judgment, and Plaintiff opposes.[1] (Docs. 18, 24, 25.) The Court will grant the Motion and terminate this action.

**I.    Background**

In Count One of his Complaint, Plaintiff alleges that he has a pacemaker and that during a search, Arizona Department of Corrections (ADC) Correctional Officer Banning used a handheld metal detector on him. (Doc. 1 at 3.) Ever since, Plaintiff has had "extremely painful chest pains" and his pacemaker has not functioned properly. (*Id*.) Plaintiff seeks damages and replacement of his "damaged pacemaker." (*Id*. at 6.)

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 20.)

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated an Eighth Amendment claim against Banning and directed Banning to answer. The Court dismissed the remaining claims and Defendants. (Doc. 7.)

**II.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

## III. Facts

The use of metal detectors on prisoners with pacemakers raises two concerns. (Doc. 19 (Def.'s Statement of Facts) ¶ 7.) One "is the possibility of 'false alarms' where the pacemaker sets off the metal detector," and the second is the "erroneous concern that the pacemaker will be adversely affected passing through the metal detector." (*Id*.; Doc. 19-1 at 7.) The ADC's Health Services Technical Manual (HSTM) states that "[t]here is no scientific evidence to support a claim of harmful interference between this equipment and metal detectors," but it is nonetheless "common community practice to have patients with pacemakers bypass metal detectors." (Doc. 19-1 at 7.) The HSTM further states that "Inmates who happen to pass through [a] walk-through [] metal detector do not need a medical evaluation." (*Id*.)

An ADC prisoner with a pacemaker is provided with a Special Needs Order (SNO) stating: "I/M has a pacemaker/ICD. Hand wanding or other alternatives to walking through a metal detector should be utilized if available." (Doc. 19 ¶ 12; Doc. 19-1 at 8.) When a prisoner claims "to have lost his/her documentation," and "an officer is in doubt, the [prisoner] may be passed through a walk-through metal detector." (*Id.* ¶ 10; Doc. 19-1 at 8.)

Plaintiff's medical records indicate he has a pacemaker and SNO, stating:

> Metal detectors for security: Interactions with metal detectors are unlikely to cause clinically significant symptoms in most patients. However, the American Heart Association recommends that you: Don't stay near the metal detector longer than is necessary. Don't lean on or stand against the system. If scanning with a hand-held metal detector is necessary, tell the security personnel that you have a pacemaker. Ask them not to hold the metal detector near the device any longer than is absolutely necessary. Or ask for an alternative form of personal search.

(Doc. 19 ¶ 13; Doc. 19-1 at 10.) That SNO was in effect until January 30, 2019. (Doc. 19-1 at 10.)

On January 23, 2018, Plaintiff informed staff that he had a pacemaker and was told to go to Defendant, who had a hand-held wand. (Doc. 24 at 7.) Plaintiff was holding the SNO when he was sent to Defendant's post for an alternative "pat search." (*Id*. at 3.) Plaintiff told Defendant that he had a pacemaker, but Defendant "kept putting that wand on my pacemaker and kept asking me what I had in me." (*Id*. at 7.) Plaintiff told Defendant again he had a pacemaker, but Defendant "kept putting the device near my pacemaker." (*Id*.) Ever since the incident, Plaintiff has experienced "weird chest pains." (*Id*.)

On January 24, 2018, Plaintiff submitted an HNR regarding the above incident, but there is no indication that any staff member responded. (*See id.*) Plaintiff submitted a second HNR, a copy of which he attached to his Response, but the writing and the date are too faint to be legible. (*See id*. at 8.) There is no indication that any staff member responded to this second HNR. (*See id.*)

Plaintiff recounted essentially the same facts in an Inmate Informal Complaint Resolution he filed on January 25, 2018. (Doc. 19-1 at 13.) Plaintiff had his "waiver" with him, but Defendant "kept putting that device over [Plaintiff's] pacemaker" and did it several times. (*Id*.) Plaintiff has "been feeling funny since [Defendant] did this," has had "weird chest pains," and his pacemaker "has not work[ed] right since [Defendant] did this." (*Id*.)

CO III Cuen responded to Plaintiff's Informal Complaint Resolution and stated that he spoke with Defendant, who told Cuen:

> In regards to I/M Price, he did not reveal that information about his pacemaker until after I scanned him. I asked him why he was holding his left shoulder and he stated, "Are you trying to kill me[?]" I responded, "What do you mean," I/M Price stated "I have a pace maker man!" After he revealed that I scanned other portions of his body away from his chest. I was not directed nor told he had a pace maker[;] when inmates cannot clear the magneto polls, they get scanned with a hand held

- 4 -

<blockquote>
wand for further inspection. I have not heard of any issues from inmates who actually walked through the magneto polls.
</blockquote>

(*Id.* at 15.)

CO III Cuen said he considered the matter resolved and that Plaintiff may continue to the next step in the grievance process by filing an appeal. (*Id.*)

Plaintiff appealed Cuen's decision and received a response on March 20, 2018 from Assistant Facility Health Administrator Brin Hofer.[2] (Doc. 19 ¶ 16.) Hofer stated in the response that Plaintiff's "primary medical concern . . . related to a concern that your pacemaker may have been damaged in some way by being exposed to a hand held metal detector in January, 2018." (Doc. 19-1 at 17.) Hofer continued:

> The American Heart Association states that "Interactions with metal detectors are unlikely to cause clinically significant symptoms in most patients." According to a medical review just completed, there is no evidence in your medical record that the January exposure to a hand held metal detector has compromised the effectiveness of your pacemaker. Having said that, a recommendation is being made to have your pacemaker checked by [a] Cardiologist to be certain it is functioning correctly.

(*Id.*)

On April 6, 2018, Plaintiff saw a cardiologist, Dr. Jonathan P. Man, and reported to Dr. Man that a guard "put[] a magnetic wand on him and that made him feel unwell." (*Id.* at 19.) Upon examining Plaintiff, Dr. Man noted that Plaintiff's cardiovascular system had "Normal rate, regular rhythm, normal heart sounds and intact distal pulses," and "Device site looks well healed, no signs of infection, erythema or hematoma." (*Id.* at 20.) Dr. Man wrote "Pacemaker functioning normally" and that he "[r]eassured [Plaintiff] that getting magnetic wand over pacemaker won't damage his heart. It will make him feel unwell due to lack of synchrony." (*Id.* at 21.) Dr. Man noted that Plaintiff was to return in about six months or if his symptoms worsened or failed to improve. (*Id.*)

---

[2] Neither Defendant nor Plaintiff included a copy of Plaintiff's appeal. Defendant provided Hofer's response.

On August 5, 2019, "Plaintiff's pacemaker was again checked by cardiology" and it was "noted to be functioning normally." (Doc. 19 ¶ 18; Doc. 19-1 at 23.)

Plaintiff submits what appears to be a SNO for "Limited Duty" that was issued on May 5, 2016 and expired May 5, 2017. (Doc. 24 at 13.) The handwritten note on the document is too faint to be legible. (*See id.*) Plaintiff submits another document that also appears to be a SNO, noting that Plaintiff has "Medical ADA Restrictions/Special Needs" in the form of a "Pacemaker/Defibrillator." (*Id.* at 14.) The SNO was active from March 11, 2019 until March 11, 2020. (*Id.*) At the bottom of the document is the same advisory contained in the other SNO, stating that "Interactions with metal detectors are unlikely to cause clinically significant symptoms in most patients," but that the American Heart Association recommends not staying near the metal detector longer than necessary and to tell security personnel that you have a pacemaker. (*Id.*)

## IV. Eighth Amendment Legal Standard

To prevail on an Eighth Amendment medical care claim, a prisoner must show "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are two prongs to this analysis, one objective and the other subjective. First, a prisoner must show a "serious medical need." *Jett*, 439 F.3d at 1096 (citations omitted). Examples include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60.

Second, a prisoner must show that the defendant's response to the need was deliberately indifferent. *Jett*, 439 F.3d at 1096. An official acts with deliberate indifference if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious

1 medical needs when they deny, delay, or intentionally interfere with medical treatment," *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir.2002) (internal citations and quotation marks omitted), or when they fail to respond to a prisoner's pain or possible medical need. *Jett*, 439 F.3d at 1096.

Even if deliberate indifference is shown, to support an Eighth Amendment claim the prisoner must show harm caused by the indifference. *Jett*, 439 F.3d at 1096 (the harm need not be substantial, although substantial harm would provide additional support for the showing of deliberate indifference).

**V. Discussion**

    **A. Serious Medical Need**

Defendant argues that "[n]o reasonable jury could conclude that Plaintiff had a serious medical need because the interaction between a handheld metal detector and a pacemaker does not lead to harm." (Doc. 18 at 6.)

Defendant misconstrues the objective portion of the legal standard. A serious medical need may be "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059-60. In this case, medical personnel found Plaintiff's heart condition to be worthy of comment or treatment because a pacemaker was implanted and it appears that he regularly has the pacemaker checked by medical professionals. The record also contains evidence of SNOs for a pacemaker and an expired SNO for light duty work.

Further, while Defendant contends that the interaction between a handheld metal detector and a pacemaker does not lead to harm, Defendant's own evidence suggests otherwise. Although the advisory in Plaintiff's medical record states that "interactions with metal detectors are unlikely to cause clinically significant symptoms in most patients," it also advises a pacemaker patient not to stay near a metal detector longer than necessary, to inform security personnel that the patient has a pacemaker, and to ask security personnel

1  not to hold the metal detector near the pacemaker any longer "than is absolutely necessary"
2  or to ask for an alternative form of personal search. (Doc. 19-1 at 10.) Thus, there appears
3  to be some question among medical authorities whether metal detectors may cause harm
4  to persons with pacemakers. Based on this record, there is a question of fact whether
5  Plaintiff has a serious medical need.

### B. Deliberate Indifference

Defendant argues that he was not deliberately indifferent because when he was asked about the incident, he "stated that he was not aware that Plaintiff had a pacemaker until after he had scanned him with a handheld metal detector." (Doc. 18 at 7.) Defendant's evidence in support of this lack of knowledge is CO III Cuen's response to Plaintiff's informal complaint in which Defendant told Cuen that Plaintiff did not tell him Defendant had a pacemaker until after Defendant had used the wand on Plaintiff.

Plaintiff states in his January 24, 2018 HNR that he told Defendant he was sent to Defendant because he had a pacemaker, but Defendant "kept putting that wand on my pacemaker area[;] kept asking me what I had in me." (Doc. 24 at 7.) Plaintiff recounted this same scenario in his Informal Complaint. (*See* Doc. 19-1 at 13.) Based on this evidence, which the Court must accept as true for purposes of this motion, there is a question of fact whether Defendant was aware of Plaintiff's serious medical need.

The next issue is whether Defendant disregarded an excessive risk to Plaintiff's health or safety. Based on this record, it appears that this was an isolated incident and was more akin to negligence, gross negligence, or incompetence, none of which rise to the level of an Eighth Amendment violation. *See Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) ("[T]he indifference to [] medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."); *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) ("In determining deliberate indifference, we scrutinize the particular facts and look for substantial indifference in the individual case, indicating more than mere negligence or isolated occurrences of neglect."); *McGuckin*, 974 F.2d at 1060–61 (repeated failure to properly

treat a prisoner or a single failure that is egregious strongly suggests deliberate indifference).

Even assuming arguendo that Plaintiff could show that Defendant's conduct rose to the level of deliberate indifference, Defendant argues that Plaintiff cannot show he was harmed because Plaintiff's pacemaker was functioning normally when he saw the cardiologist on April 6, 2018 and again when it was checked again on August 5, 2019. (Doc. 18 at 7.) Plaintiff does not dispute that his pacemaker was not harmed by Defendant's use of the wand.

Defendant also cites to the cardiologist's statement that he told Plaintiff "getting a magnetic wand over pacemaker won't damage his heart." (Doc. 27 at 3.) The Court notes that the cardiologist also said "[i]t will make him feel unwell due to lack of synchrony," but there is no evidence in the record explaining what that notation means, and the cardiologist did not indicate in his report that Plaintiff needed any immediate follow-up care related to this notation. (*See* Doc. 19-1 at 21.) The cardiologist also determined that Plaintiff's cardiovascular system had "Normal rate, regular rhythm, normal heart sounds and intact distal pulses." (*Id*. at 20.) Although Plaintiff said in his January 24, 2018 HNR and January 25, 2018 Informal Complaint that he had "weird chest pains" after Defendant used the wand on him (Doc. 24 at 7; Doc. 19-1 at 13), there is no evidence of any needed medical care as a result, and Plaintiff does not say he sought medical care after that. Based on this record, no reasonable jury would conclude that Plaintiff suffered harm as a result of Defendant's use of the magnetic wand over his pacemaker.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant Banning's Motion for Summary Judgment (Doc. 18).

(2) Defendant Banning's Motion for Summary Judgment (Doc. 18) is **granted**, and the action is terminated with prejudice. The Clerk of Court must enter judgment accordingly.

Dated this 13th day of February, 2020.

David G. Campbell
Senior United States District Judge